IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTHWESTERN CORPORATION,<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 03-12872 (KJC) |
| THE PLAN COMMITTEE OF NORTHWESTERN CORPORATION,<br><br>Appellant,<br><br>v.<br><br>NORTHWESTERN CORPORATION, *et al*,<br><br>Appellees. | Civil Action No. 06-157-JJF |
| AD HOC COMMITTEE OF CLASS 7 DEBTHOLDERS,<br><br>Appellant,<br><br>v.<br><br>NORTHWESTERN CORPORATION, *et al*,<br><br>Appellees. | Civil Action No. 06-158-JJF |

### NORTHWESTERN CORPORATION'S RESPONSE TO APPELLANTS' OPENING BRIEF

Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
(302) 661-7000
Attorneys for Appellee, Reorganized Debtor
NORTHWESTERN CORPORATION

Jesse H. Austin, III,
Karol K. Denniston
PAUL, HASTINGS, JANOFSKY & WALKER LLP
600 Peachtree Street, NE
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400

Dated: May 11, 2006

# TABLE OF CONTENTS

PAGE

I. PRELIMINARY STATEMENT ................................................................. 1

II. STATEMENT OF APPELLATE JURISDICTION ..................................... 2

III. STATEMENT OF THE ISSUE PRESENTED AND THE APPLICABLE STANDARD OF APPELLATE REVIEW ...................................................... 2

IV. BACKGROUND ......................................................................................... 3

    The Disputed Claims Reserve .................................................................... 3

    QUIPS Litigation ........................................................................................ 4

    The PPL Settlement ................................................................................... 5

    The Motion for a Surplus Distribution ....................................................... 6

V. ARGUMENT ............................................................................................... 7

    A. Section 7.7 of the Plan is clear and unambiguous and the Bankruptcy Court properly interpreted the Plan in determining that the Surplus Distribution Motion was premature given the outstanding disputed claims of Magten and Law Debenture ........................................................................... 7

    B. The Bankruptcy Court's denial of the Surplus Distribution Motion ensures that a potential recovery by the Option 2 QUIP claimholders from the Disputed Claims Reserve is protected ............................................................................................ 8

VI. CONCLUSION .......................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

*In re Marvel Entertainment Group, Inc.*,
  140 F.3d 463 (3d Cir. 1998) ................................................................................3

*In re PCH Associates*,
  949 F.2d 585 (2d Cir. 1991) .................................................................................8

*In re Vause*,
  886 F.2d 794 (6th Cir. 1989) ...............................................................................8

*In re Zinchiak*,
  406 F.3d 214 (3d Cir. 2005) .................................................................................3

### STATUTES

28 U.S.C. § 158 ..............................................................................................................2

LEGAL_US_W # 53556761.2

COMES NOW NorthWestern Corporation, the reorganized debtor in the above-captioned civil actions ("NorthWestern") and files this, its response to the Opening Brief of Appellant, The Plan Committee filed by The Plan Committee of NorthWestern Corporation, *et al* (the "Plan Committee") and joined by the Ad Hoc Committee of Class 7 Debtholders (the "Ad Hoc Committee") through its Joinder of Ad Hoc Committee of Class 7 Debtholders to the Opening Brief of Appellant, The Plan Committee, showing the Court as follows:

I.

**PRELIMINARY STATEMENT**

Both the Plan Committee and the Ad Hoc Committee appeal the Bankruptcy Court's Order Denying Motion of the Plan Committee in Aid of Consummation and Implementation of the Plan for Order Authorizing and Directing NorthWestern Corporation to Distribute Surplus Distributions (the "Order" and the "Surplus Distribution Motion"). In the Order, the Bankruptcy Court denied the Surplus Distribution Motion seeking to have the Bankruptcy Court issue an order requiring Northwestern to make a Surplus Distribution under the Debtor's Second and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan").[1]

The Bankruptcy Court correctly ruled that Appellants' request for distribution of shares from the Disputed Claims Reserve is premature and should not be permitted, given the outstanding disputed claims that still remain to be satisfied out of the Disputed Claims Reserve. Appellants would have this Court direct NorthWestern to deplete the Disputed Claims Reserve by making a distribution of surplus shares to Class 7 and Class 9 creditors of NorthWestern's bankruptcy estate – creditors who have already received

---

[1] Capitalized terms not otherwise defined herein have the same definition given to them in the Plan.

significant distributions in the bankruptcy case – before the last remaining general unsecured claims still outstanding against NorthWestern's bankruptcy estate have been resolved.

Contrary to the suggestion of the Plan Committee and joined by the Ad Hoc Committee, the issuance of an order requiring a Surplus Distribution would have the effect of impermissibly favoring certain creditors of NorthWestern's bankruptcy estate, creditors whose interests are being championed by the Plan Committee and Ad Hoc Committee, over other creditors whose claims against the estate are still unresolved and who have not yet received any distributions from the bankruptcy estate. Such treatment is contrary to the policies embodied in the Bankruptcy Code as well as the provisions of the Plan. The Bankruptcy Court's decision properly balanced these competing interests in ruling that no surplus distributions can be made until the remaining disputed claims against NorthWestern's bankruptcy estate are resolved. The appeals should be denied.

## II.

## STATEMENT OF APPELLATE JURISDICTION

NorthWestern concurs with the Appellants that this Court has jurisdiction to hear this appeal under 28 U.S.C. § 158 and Rule 8001 of the Federal Rules of Bankruptcy Procedure.

## III.

## STATEMENT OF THE ISSUE PRESENTED AND THE APPLICABLE STANDARD OF APPELLATE REVIEW

Appellants seek to have this Court affirmatively determine that the Bankruptcy Court erred in denying the Plan Committee's motion seeking a Surplus Distribution under Sections 1.183 and 7.7 of the Plan prior to the resolution of all Disputed Claims. In its

role as an appellate court, this Court reviews the Bankruptcy Court's findings of fact for clear error and conducts plenary review of the Bankruptcy Court's conclusions of law. In re Zinchiak, 406 F.3d 214, 221-22 (3d Cir. 2005); In re Marvel Entm't Group, Inc., 140 F.3d 463, 470 (3d Cir. 1998). The Bankruptcy Court did not commit any error in this case in refusing to order a Surplus Distribution under the Plan.

## IV.

## BACKGROUND

NorthWestern filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 14, 2003. The Bankruptcy Court confirmed the Plan on October 8, 2004 and entered the final Order Confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [App. Des. No. 22] (the "Confirmation Order") on October 19, 2004. The Plan's effective date was November 1, 2004 and it was substantially consummated on December 29, 2004.

**The Disputed Claims Reserve.** Pursuant to Section 7.5 of the Plan, NorthWestern established a Disputed Claims Reserve to be used to satisfy disputed claims against the bankruptcy estate. Section 7.5 of the Plan, entitled "Establishment and Maintenance of Reserve for Disputed Claims" provides in relevant part:

> Reorganized Debtor shall maintain the Disputed Claims Reserve equal to the aggregate of any distributable amounts of Cash and New Common Stock equal to the relevant percentage of the Distributions to which holders of Disputed Claims would be entitled under this Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim or such lesser amount as required by a Final Order.

On or about October 25, 2004, NorthWestern filed its Notice of Establishment of Claim Reserve Pursuant to Section 7.5 of the Second Amended and Restated Plan of

Reorganization Under Chapter 11 of the Bankruptcy Code and Paragraph 27 of the Confirmation Order [App. Des. No. 28] pursuant to which NorthWestern provided notice of its establishment of an initial reserve allocated to Class 9 for the Disputed Claims Reserve.

The Disputed Claims Reserve was funded with shares of NorthWestern New Common Stock. [App. Des. No. 10, Section 7.5]. Any Disputed Claim which is subsequently allowed, either through adjudication or settlement, is satisfied by a distribution of shares to the holder of the Allowed Claim from the Disputed Claims Reserve. For purposes of determining distributions, the shares in the Disputed Claims Reserve are valued at the estimated "Plan Value" of $20 per share. The stock began publicly trading after the Plan became effective on November 1, 2004. The actual market value of NorthWestern common stock has ranged from $27 to $35 per share in the last 52-week period. Any shares which remain in the Disputed Claims Reserve after the resolution of outstanding claims against NorthWestern's bankruptcy estate do not revert to NorthWestern; rather, they are to be distributed pro rata to creditors who hold Allowed Claims in Class 7 and Class 9.

**QUIPS Litigation.** Prior to the entry of the Confirmation Order, Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York ("Law Debenture") filed a complaint against NorthWestern seeking to avoid an allegedly fraudulent prepetition transfer of substantially all of the assets and liabilities of a NorthWestern subsidiary, Clark Fork & Blackfoot LLC ("Clark Fork") and the imposition of a constructive trust over such assets for the benefit of Clark Fork's creditors (the "QUIPS Litigation"). Magten and Law Debenture seek to recover approximately

$50 million from NorthWestern's bankruptcy estate in the QUIPS Litigation. This Court withdrew the reference in the QUIPS Litigation from the Bankruptcy Court on September 22, 2005 and the action is currently pending before this Court. The claims at issue in the QUIPS Litigation (the "QUIPS Claims") are the last remaining disputed claims still outstanding against NorthWestern's bankruptcy estate.

Following entry of the Confirmation Order, but before the Plan became effective, NorthWestern and Law Debenture entered into a Stipulation and Order Establishing a Disputed Claim Reserve (the "QUIPS Litigation Reserve Stipulation"). [App. Des. No. 33] The QUIPS Litigation Reserve Stipulation provided that NorthWestern would set aside a portion of its initial reserves in the Disputed Claims Reserve sufficient to satisfy a $25 million Allowed Class 9 claim for the holders of the QUIPS Claims, at the rate of recovery provided for such claims under NorthWestern's Plan, in the event they were successful on their claims in the QUIPS Litigation. [Id. at para. 1, p. 2] The QUIPS Litigation Reserve Stipulation further provided that to the extent the holders of the QUIPS Claims might succeed in obtaining a recovery in excess of the $25 million segregated reserve which was specifically earmarked for them, such additional amount would be satisfied out of the balance of assets available in the general Disputed Claims Reserve. [Id. at para. 1, p. 3] In the event the claims in the QUIPS Litigation are determined to be less than $25 million, the additional stock in the QUIPS Litigation Claims Reserve is to be released to Northwestern and is to be added to the balance of the assets in the general Disputed Claims Reserve. [Id. at para. 3, p. 3].

**The PPL Settlement.** On September 29, 2005, the Bankruptcy Court entered an order approving the settlement of a claim which had been asserted against

NorthWestern's bankruptcy estate by PPL Montana, LLC ("PPL"). [App. Des. No. 72]. A segregated reserve for the PPL claim (the "PPL Reserve") had been set aside in the Disputed Claims Reserve, pursuant to stipulation between NorthWestern and PPL, similar to the QUIPS Claims Litigation Reserve. Upon the settlement in September 2005, the PPL Reserve was released and added to the balance of shares in the general Disputed Claims Reserve. [Id. at pp. 1 - 2].

**The Motion for a Surplus Distribution.** The Plan Committee filed the Surplus Distribution Motion seeking, among other things, the authorization of a supplemental distribution under Section 7.7 of the Plan to holders of Allowed Class 7 and Class 9 Claims of all "surplus" shares in the Disputed Claims Reserve. [App. Des. No. 73]. The Surplus Distribution Motion was subsequently joined by the Ad Hoc Committee. [App. Des. No. 76]. NorthWestern filed a response to the motion [App. Des. No. 85] and Magten and Law Debenture filed a joint objection [App. Des. No. 77].

A hearing on the Surplus Distribution Motion was held in the Bankruptcy Court on January 11, 2006. The Bankruptcy Court denied the motion by Order dated February 6, 2006, ruling that it was "premature" given the ongoing litigation surrounding the disputed claims of Magten and Law Debenture in the QUIPS Claims Litigation. [App. Des. No. 92, para. H]. The Order also found that Section 7.7 of the Plan requires a full resolution of all disputed claims before NorthWestern can initiate a Surplus Distribution and that NorthWestern was not required to make a Surplus Distribution from the Disputed Claims Reserve every six months. [Id. at para. J]. Additionally, the Bankruptcy Court found that the QUIPS Litigation Reserve Stipulation applies to protect a potential distribution to Magten and Law Debenture should they succeed in obtaining a

LEGAL_US_W # 53556761.2

recovery on their claims that exceeds the segregated reserve provided for them therein. [Id. at para. K]. Both the QUIPS Litigation Reserve Stipulation and Section 7.7 of the Plan preclude any distribution from the Disputed Claims Reserve until Magten's and Law Debenture's claims are resolved. [Id. at para. L]. The instant appeals by the Plan Committee and the Ad Hoc Committee seek reversal of the Bankruptcy Court's Order denying the Surplus Distribution Motion.

## V.

## ARGUMENT

**A.     Section 7.7 of the Plan is clear and unambiguous and the Bankruptcy Court properly interpreted the Plan in determining that the Surplus Distribution Motion was premature given the outstanding disputed claims of Magten and Law Debenture.**

Appellants continue to misread the Plan and wrongly assert that it requires NorthWestern to make Surplus Distributions every six months from the Effective Date, regardless of whether or not all of the Disputed Claims are resolved. The Bankruptcy Court properly interpreted the Plan which permits Surplus Distributions when there is Unclaimed Property and when an excess in the amount of New Common Stock is in the Disputed Claims Reserve. Surplus Distributions are permitted at each six (6) month anniversary of the Effective Date, but are not required. [App. Des. No. 10, Section 7.7]. Only when all claims have been Allowed, can NorthWestern even know whether and how much should be distributed on any Subsequent Distribution Date. To suggest that the Plan requires a Surplus Distribution before all disputed claims are resolved is inconsistent with the Plan provisions establishing the Disputed Claims Reserve, the claim allowance procedures in the Plan, and the Bankruptcy Code's requirement that all creditors are to be treated equally.

- 7 -

LEGAL_US_W # 53556761.2

The Bankruptcy Court properly interpreted the Plan consistent with NorthWestern's obligations to its creditors when it ordered that the segregated reserve stemming from the settlement of the PPL claim be released to NorthWestern and that it "be retained in the Disputed Claim Reserve established pursuant to Section 7.5 of the [Plan]." [App. Des. No. 72, p. 2] As previously noted, Section 7.5 of the Plan requires NorthWestern to "maintain the Disputed Claims Reserve equal to the aggregate of any distributable amounts of . . . New Common Stock equal to the relevant percentage of the Distributions to which holders of Disputed Claims would be entitled under this Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim or such lesser amount as required by a Final Order." [App. Des. No. 10].

**B.     The Bankruptcy Court's denial of the Surplus Distribution Motion ensures that a potential recovery by the Option 2 QUIP claimholders from the Disputed Claims Reserve is protected.**

One of the fundamental tenets of the bankruptcy code is the equal treatment of similarly situated creditors. In re PCH Assocs., 949 F.2d 585, 598 (2d Cir. 1991) (noting the predominant policy objective of a bankruptcy proceeding is the equal treatment of similarly situated creditors); In re Vause, 886 F.2d 794, 803 (6th Cir. 1989) (The Bankruptcy Code requires equal treatment of similarly situated creditors.). The relief Appellants sought from the Bankruptcy Court, if granted, would result in the unequal treatment of similarly-situated creditors, providing certain creditors with Allowed Claims with a premature distribution that, in the event Magten and Law Debenture prevail in their dispute with NorthWestern, would require inequitable treatment of Magten's and Law Debenture's claims. As the Bankruptcy Court properly recognized, to permit a Surplus Distribution at this time would be contrary to the terms of the Plan. Moreover, in

denying the Surplus Distribution Motion, the Bankruptcy Court's decision properly balanced the competing interests of the various creditors of NorthWestern's bankruptcy estate, consistent with NorthWestern's obligations to such creditors under the Plan.

The relief which the Plan Committee and the Ad Hoc Committee seek herein is both premature and inequitable. The Class 7 claim holders have already received significant distributions from NorthWestern's bankruptcy estate. The QUIPS Claims Litigation claimants, whose recovery depends upon the availability of assets in the Disputed Claims Reserve, have received nothing.[2] Were this Court to reverse the Bankruptcy Court and order NorthWestern to make a surplus distribution using the shares in the general Disputed Claims Reserve, Class 7 claim holders would receive a windfall while the holders of the unresolved QUIPS claims face the potential risk of a lesser recovery than they might otherwise be entitled to because of the premature depletion of the Disputed Claims Reserve. Although NorthWestern strongly disputes the QUIPS Claims, the Disputed Claims Reserve should be left intact until the remaining claims are resolved. Given the current amount of shares in the Disputed Claims Reserve, it is virtually certain that the Class 7 and 9 creditors will ultimately receive a surplus distribution. However, the exact amount and timing of that surplus distribution must await the resolution of the QUIPS Litigation, as the Bankruptcy Court has correctly ruled.

---

[2] The Plan Committee and the Ad Hoc Committee have actively opposed NorthWestern's previous attempts to settle the QUIPS Claims. Both filed objections to a motion for approval of a proposed settlement in the Bankruptcy Court in March 2005. Both also participated in two prior mediations in 2005 which failed to result in a settlement. The Plan Committee is entrusted with rights under the Plan to review and object to settlements of claims against NorthWestern's bankruptcy estate. Since distributions to the QUIPS claimants will reduce the amount of shares available in the Disputed Claims Reserve for distribution to the Class 7 and Class 9 creditors who are represented by the Plan Committee, the Plan Committee has taken an active stance against settlement in the QUIPS Litigation which is presently pending before this Court.

LEGAL_US_W # 53556761.2

## VI.

## CONCLUSION

The Bankruptcy Court committed no error when it denied the Surplus Distribution Motion. The Bankruptcy Court properly interpreted the Plan consistent with the Bankruptcy Code, recognizing that NorthWestern was in the middle of a contest between warring Class 7 claimants. The relevant sections of the Plan were followed by the Bankruptcy Court when issuing the Order. A Surplus Distribution would allow one group of creditors to receive a benefit at the expense of other claimants. For the reasons stated above, the ruling of the Bankruptcy Court was correct and should be affirmed.

Respectfully submitted this 11th day of May, 2006.

GREENBERG TRAURIG, LLP

By: _____
Dennis A. Meloro (No. 4435)
Victoria W. Counihan (No. 3488)
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
(302) 661-7000

and

PAUL, HASTINGS, JANOFSKY
& WALKER, LLP
Jesse H. Austin, III
Karol K. Denniston
600 Peachtree Street, NE
Suite 2400
Atlanta, GA 30308
Telephone:   (404) 815-2400

Attorneys for NorthWestern Corporation

## CERTIFICATE OF SERVICE

This is to certify that on this date I served copies of the foregoing NORTHWESTERN CORPORATION'S RESPONSE TO APPELLANTS' OPENING BRIEF upon the parties listed below as follows: upon Local Counsel via Hand Delivery and via First Class, United States Mail upon the remaining parties.

Alan W. Kornberg
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Neil B. Glassman
The Bayard Firm
222 Delaware Avenue
Suite 900
Wilmington, Delaware 19899

Mark Kenney
Office of the United States Trustee
844 King Street
Suite 2313
Wilmington, Delaware 19801

Adam G. Landis
Landis Rath & Cobb, LLP
919 Market Street
Suite 600
P.O. Box 2087
Wilmington, Delaware 19899

Dale R. Dube
Blank Rome LLP
1201 Market Street
Suite 800
Wilmington, Delaware 19801

Bonnie Steingart
Fried, Frank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, New York 10004

John V. Snellings
Nixon Peabody LLP
100 Summer Street
Boston, Massachusetts 02110

Kathleen M. Miller
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, Delaware 19899

Phillip Bentley
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, New York 10036

Steven J. Reisman
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

This 11th day of May, 2006.

_____
Dennis A. Meloro (No. 4435)