```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE

IN RE:                          :
                                :  Chapter 11
NORTHWESTERN CORPORATION,       :
                                :
         Reorganized Debtor. :  Case No. 03-12872 (KJC)
                                :
_____:_____

THE PLAN COMMITTEE OF           :
NORTHWESTERN CORPORATION,       :
                                :
         Appellant,             :
                                :
    v.                          :  Civil Action No. 06-157-JJF
                                :
NORTHWESTERN CORPORATION, et    :
al.,                            :
                                :
         Appellees.             :
_____:_____

AD HOC COMMITTEE OF CLASS 7     :
DEBTHOLDERS,                    :
                                :
         Appellant,             :
                                :
    v.                          :  Civil Action No. 06-158-JJF
                                :
NORTHWESTERN CORPORATION, et    :
al.,                            :
                                :
         Appellees.             :
```

_____

Alan W. Kornberg, Esquire; Kelley A. Cornish, Esquire and
Margaret A. Phillips, Esquire of PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP, New York, New York.
Neil B. Glassman, Esquire and Charlene Davis, Esquire of THE
BAYARD FIRM, Wilmington, Delaware.

Attorneys for Appellant, The Plan Committee.

Philip Bentley, Esquire and Matthew J. Williams, Esquire of
KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, New York.
Adam G. Landis, Esquire; Rebecca L. Butcher, Esquire and Kerri K.

Mumford, Esquire of LANDIS RATH & COBB LLP, Wilmington, Delaware.

Attorneys for Appellant, The Ad Hoc Committee of Class 7
Debtholders.

Bonnie Steingart, Esquire; Gary L. Kaplan, Esquire and John W.
Brewer, Esquire of FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP,
New York, New York.
Dale R. Dubé, Esquire and Bonnie Glantz Fatell, Esquire of BLANK
ROME LLP, Wilmington, Delaware

Attorneys for Appellee, Magten Asset Management Corporation.

John V. Snellings, Esquire and Amanda Darwin, Esquire of NIXON
PEABODY LLP, Boston, Massachusetts.
Kathleen M. Miller, Esquire of SMITH, KATZENSTEIN & FURLOW LLP,
Wilmington, Delaware.

Attorneys for Law Debenture Trust Company of New York.

Jesse H. Austin, III, Esquire and Karol K. Denniston, Esquire of
PAUL, HASTINGS, JANOFSKY & WALKER LLP, Atlanta, Georgia.
Victoria W. Counihan, Esquire and Dennis A. Meloro, Esquire of
GREENBERG TRAURIG, LLP, Wilmington, Delaware.

Attorneys for Appellee, the Reorganized Debtor NorthWestern
Corporation.

---

### MEMORANDUM OPINION

March ___, 2007
Wilmington, Delaware.

Farnan, District Judge.

Pending before the Court are two appeals, one filed by the Plan Committee (the "Plan Committee") of NorthWestern Corporation ("NorthWestern" or the "Reorganized Debtor") and one filed by an ad hoc group of creditors (the "Ad Hoc Committee") holding undisputed Class 7 Claims against the Reorganized Debtor. Both the Plan Committee and the Ad Hoc Committee (collectively, "Appellants") appeal from the February 2, 2006 Order of the United States Bankruptcy Court for the District of Delaware, denying the Plan Committee's Motion In Aid Of Consummation And Implementation Of The Plan For Order Authorizing And Directing Northwestern Corporation To Distribute Surplus Distributions. For the reasons set forth below, the Court will affirm the Bankruptcy Court's Order.

## I. PARTIES' CONTENTIONS

By its appeal, the Plan Committee contends that the Bankruptcy Court erred in declining to authorize the Plan Committee to distribute to unsecured creditors a surplus held in a Disputed Claims Reserve consisting of more than 2.3 million shares of New Common Stock valued at $80 million. The Plan Committee contends that the Bankruptcy Court erroneously construed Section 7.7 of the Plan to require that each and every Disputed Claim, including the QUIPS Litigation claims asserted by Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company

1

of New York ("Law Debenture"), must be resolved prior to any distributions. According to the Plan Committee, the plain and unambiguous language of Section 7.7 obligates Northwestern to make Surplus Distributions every six months, regardless of whether all Disputed Claims are resolved. The Plan Committee contends that the Bankruptcy Court's reading of Section 7.7 is contrary to the plain language of the Plan and results in a stay and/or impermissible modification of a substantially consummated Plan in violation of the Bankruptcy Code. The Ad Hoc Committee has joined in the arguments made by the Plan Committee.

In response, Appellees Magten and Law Debenture contend that the Bankruptcy Court correctly concluded that the Plan Committee's Motion was premature in light of the unresolved status of the QUIPS Litigation. Magten and Law Debenture contend that a surplus does not exist, unless there are sufficient shares of New Common Stock to satisfy all the Disputed Claims in full. According to Magten and Law Debenture, a distribution at this time, might leave them with the unfair and inequitable result of potentially recovering less than the full amount of their resolved claims. Thus, Magten and Law Debenture contend that the Bankruptcy Court correctly read Section 7.7 of the Plan in conjunction with the stipulation entered into between Northwestern and Law Debenture (the "QUIPS Stipulation") which established a "sub-reserve" within the Disputed Claims Reserve and provided Magten and Law Debenture

2

with the right to draw from the larger claims reserve in the event their recovery exceeded the amount set aside in the "sub-reserve."

Northwestern has also filed a Response to Appellant's Opening Brief contending that the Bankruptcy Court's Order should be affirmed.  Northwestern contends that the Bankruptcy Court's interpretation of Section 7.7 of the Plan is consistent with its plain language, as well as with the other provisions of the Plan including, Section 7.5 which requires NorthWestern to "maintain a Disputed Claims Reserve equal to the aggregate of any distributable amounts of Cash and New Common Stock equal to the relevant percentage of the Distributions to which holders of Disputed Claims would be entitled under this Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim or such lesser amount as required by a Final Order."  NorthWestern also contends that the Bankruptcy Court's decision to deny the Plan Committee's Motion ensures that the Disputed Claims Reserve is protected to satisfy any potential recovery by the holders of claims being litigated through the QUIPS Litigation.

## II.    STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from the Bankruptcy Court pursuant to 28 U.S.C. §158(a).  The Court reviews the Bankruptcy Court's findings of fact under a "clearly erroneous" standard, and reviews its legal conclusions de novo.  See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197

3

F.3d 76, 80 (3d Cir. 1999).  In reviewing mixed questions of law and fact, the Court accepts the Bankruptcy Court's findings of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'"  Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (quoting Universal Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)).  The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a de novo basis in the first instance.  Baroda Hiss Inv., Inc. v. Telegroup Inc., 281 F.3d 133, 136 (3d Cir. 2002).

III.  DISCUSSION

    In pertinent part, Section 7.7 of the Plan provides:

        On each Subsequent Distribution Date, the holders
    of Allowed Claims shall receive a Pro Rata Share in the
    Surplus Distributions attributable to such holders'
    Class; provided, however that the Reorganized Debtor
    shall not be under any obligation to make Surplus
    Distributions on a Subsequent Distribution Date unless
    the aggregate market value of the Surplus Distributions
    (which value shall be determined based on the intrinsic
    value as of the Effective Date) to be distributed on
    such Subsequent Distribution Date exceeds $50,000 in any
    Class; provided, further that if the Final Distribution
    required under this Plan is less than $25,000 in
    aggregate market value in any Class such Surplus
    Distributions shall revest in Reorganized Debtor.

Plan at § 7.7 (emphasis added).  Section 7.7 of the Plan goes on to define "Surplus Distribution" as

4

> (i) Unclaimed Property; and (ii) <u>to the extent that a</u>
> <u>Disputed Claim is not Allowed or becomes an Allowed</u>
> <u>Claim in an amount less than the Disputed Claim Amount,</u>
> <u>any excess of the amount of Cash or New Common Stock in</u>
> <u>the Disputed Claims Reserve attributable to such</u>
> <u>Disputed Claim over the amount of Cash or New Common</u>
> <u>Stock actually distributed on account of such Disputed</u>
> <u>Claim plus any interest, dividends or other</u>
> <u>Distributions earned thereon.</u>

<u>Id.</u> (emphasis added).  "Subsequent Distribution Date" is also

defined as "each six (6) month anniversary of the Effective Date."

<u>Id.</u> at § 1.183.

In this case, the Reorganized Debtor reached a settlement

with PPL Montana LLC ("PPL") which resulted in certain shares that

had been set aside for PPL to be released into the Disputed Claims

Reserve.  In the Court's view, these released shares meet the

second definition of "Surplus Distribution" set forth in Section

7.7 of the Plan.  The Plan requires distribution of such surpluses

every six months and does not specifically provide that all

Disputed Claims must be resolved before any Surplus Distribution

can be made.  The Court concludes that the Plan language is clear

and unambiguous and that Surplus Distributions are mandated

without regard to the status of any other Disputed Claims,

including the QUIPS claims.  To hold otherwise would, in the

Court's view, allow the QUIPS Stipulation to modify Section 7.7 of

the Plan, a result which is prohibited by Section 1127(b) of the

Bankruptcy Code because the Plan has been confirmed and

substantially consummated.  <u>See</u> <u>e.g.</u>, <u>Almeroth v. Innovative</u>

5

Clinical Solutions, Ltd. (In re Innovative Clinical Solutions),
Ltd., 302 B.R. 136, 144 (Bankr. D. Del. 2003).

Magten and Law Debenture contend that a distribution before
the final resolution of their Disputed Claims would result in
unequal treatment among the creditors in violation of Section
1129(b) of the Bankruptcy Code.  In the Court's view, this result
can be avoided by remanding this matter to the Bankruptcy Court
for further inquiry regarding the amount of shares in the Disputed
Claims Reserve and the estimated amount of shares that would be
necessary to allow the QUIPS claimants to recover fully on their
claims.  At this juncture, Northwestern is maintaining a Disputed
Claims Reserve solely for the benefit of the QUIPS Litigation
claims.  The sub-reserve created for the QUIPS claims holds enough
shares to satisfy $25 million dollars in claims pursuant to the
QUIPS Stipulation.  Magten and Law Debenture have, in other papers
related to this litigation, valued their claims in full at $50
million; however in the context of this appeal, Magten and Law
Debenture contend that their claims exceed $50 million.  Compare
D.I. 18, Exh. A at 3 ("Despite the substantial consummation of the
Plan, Northwestern can readily provide Magten with a recovery on
the full value of its claim - a $50 million allowed claim . . .")
with D.I. 16 at 2 ("Given that the claims of Magten and Law
Debenture are in excess of $50 million, the Bankruptcy Court
reached the only rational conclusion - there can be no

6

determination that a surplus exists.")   Northwestern has similarly made various representations to the Bankruptcy Court concerning the amount of shares held in the Disputed Claims Reserve.   The latest suggestion from the Plan Committee's papers is that the Disputed Claims Reserve holds enough shares to satisfy $50 million in claims by the QUIPS claimants with another 1.5 million shares left over as surplus.   D.I. 18 at 5.   In the Court's view, these matters should be left to the Bankruptcy Court to sort out, with the guidance that, if a Surplus Distribution exists, it should be distributed under Section 7.7 of the Plan, in accordance with this decision.   Accordingly, the Court will reverse the decision of the Bankruptcy Court and remand this matter to the Bankruptcy Court to require NorthWestern to make a Surplus Distribution consistent with Section 7.7 of the Plan, after fully reserving shares for the QUIPS Litigation in an amount to be determined by the Bankruptcy Court.

**IV. CONCLUSION**

For the reasons discussed, the Court will reverse the February 2, 2006 Order of the Bankruptcy Court and remand this matter for further findings and/or proceedings consistent with this Memorandum Opinion.

An appropriate Order will be entered.

7